UNITED STATES OF AMERICA,

      v.                                                                               Case No. 13-MJ-00449-WEC

DECRYPTION OF A SEIZED
DATA STORAGE SYSTEM,

        Defendant.

**INTERESTED PARTY'S OBJECTIONS TO THE ORDER GRANTING *EX PARTE* REQUEST FOR RECONSIDERATION OF THE UNITED STATES APPLICATION UNDER THE ALL WRITS ACT & TO THE MAGISTRATE JUDGE'S DETERMINATIONS UNDERLYING SUCH ORDER**

Jeffrey Feldman ("Feldman"), pursuant to Gen. L.R. 72(c) and Fed. R. Crim. P. 59, hereby respectfully asserts the following objections to the Order Granting *Ex Parte* Request for the Reconsideration of the United States Application Under the All Writs Act ("Order Compelling Decryption") and to the Magistrate Judge's determinations on which the Order Compelling Decryption relies.

**I. The Order Compelling Decryption is invalid as issued pursuant to a fundamentally unfair *ex parte* governmental action and judicial proceeding which violated Feldman's due process rights guaranteed by the Fourteenth, Fifth, and Sixth Amendments to the United States Constitution.**

The Order Compelling Decryption is invalid and must be vacated, as issued pursuant to a fundamentally unfair *ex parte* governmental action and proceeding which violated Feldman's due process rights guaranteed by the Fourteenth, Fifth and Sixth Amendments to the United States Constitution, including the rights to fairness and due process of law, the rights to be heard and present evidence and witnesses in his defense, and the right to be represented by counsel at critical stages criminal proceedings.

In this case the search warrant, properly obtained by *ex parte* governmental action and, via an *ex parte* proceeding, was signed by a Magistrate Judge on January 22, 2013, served and executed on January 24, 2013. *Aguilar v. Texas*, 378 U.S. 108, 110-111, 84 S. Ct. 1509 (arrest or search warrants normally issue from an *ex parte* proceeding in which a neutral and detached magistrate is *the only initial buffer* between government and citizen); *see also Johnson v. United State*s, 333 U.S. 10, 13-14 (1948).

Feldman submits that subsequent to the warrant's service and execution, the proceedings in this case -- where Feldman's liberty and his due process right to be free from compelled self-incrimination were at stake -- required notice and a hearing, at which Feldman could defend against the government's efforts to force him to self-incriminate, so he could be convicted and imprisoned. Both Feldman and this Court were harmed by the lack of due process which would allow Feldman to challenge the government's assertions and allegations, and to defend (while represented by counsel) against any arguments made in support of the Government's Application and Request for Reconsideration.

The Due Process Clause of the Fifth Amendment guarantees, "No person shall… be deprived of life, liberty, or property, without due process of law."

The precise parameters of required "due process" are not fixed, but depend on "time, place and circumstances." C*afeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Undersigned counsel has searched, but has found no cases addressing the propriety of an *ex parte* proceeding in a situation like Feldman's or the precise

parameters of due process due here.

But certain due process principles are of bedrock stature, particularly in criminal cases. "The adversary process is the basic framework of the American criminal justice system. . . . If one party can skew the process to its advantage, the integrity of the entire process is harmed." *United States v. Moya-Gomez,* 860 F.2d 706, 728-29 (7th Cir. 1988), cert. denied, 109 S. Ct. 3221 (1989). "A fundamental requirement of due process is the opportunity to be heard," G*rannis v. Ordean*, 234 U.S. 385, 394 (1914), which *ex parte* proceedings necessarily fails to provide. The seizure of *real property* without first affording the owner notice and an opportunity to be heard violates due process in the absence of exigent circumstances. *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S. Ct. 492, 500-05 (1993). Surely the same due process is due when seizure of *liberty* can occur, as in Feldman's case, who is being forced to self-incriminate (thus risk liberty) and who faces imprisonment for disobeying the compelled decryption order which he cannot obey.

Another key tenet of due process is openness: secrecy itself is inconsistent with the fundamental tenets of due process. *Home Box Office, Inc. v. F.C.C.,* 567 F.2d 9, 56 (D.C. Cir.) (per curiam), *cert. denied,* 434 U.S. 829 (1977). Decades ago the United States Supreme Court noted the "growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis et al. v. United States,* 384 U.S. 855, 870, 86 S. Ct. 1840, 1849 (1966); see also U*nited States v. Amabile*, 395 F.2d 47, 53 (7th Cir. 1968), certiorari denied, 401 U.S. 924. In Feldman's case, the secrecy of the *ex parte* proceedings was

justified by nothing, served no valid governmental end, and was contrary to the fundamental tenets of due process.

The United Stated Court of Appeals for the Ninth Circuit so cautioned:

> situations where the court acts with the benefit of only one side's presentation are uneasy compromises with some overriding necessity, such as the need to act quickly or to keep sensitive information from the opposing party. Absent such compelling justification, *ex parte* proceedings are anathema in our system of justice and, in the context of a criminal trial, may amount to denial of due process.

*United States v. Thompson*, 827 F.2d 1254, 1258-59 (9th Cir. 1987).

Feldman submits that no valid governmental interest justified the *ex parte* nature of the proceeding regarding the Application and *Ex Parte* request for Reconsideration, rather than the adversary format normally required in criminal proceedings: there were no valid secrecy requirements; no significant costs or burdens would flow from an adversary proceeding; there was no need to act quickly; no need to keep sensitive information from Feldman. All this weighs heavily against the *ex parte* nature of the reconsideration proceeding in this case.

An *ex parte* proceeding always presents the risk of an erroneous result. U*nited States v. Michelle's Lounge*, 39 F.3d 684, 699 (7th Cir. 1994). As argued in detail *infra*, it produced an erroneous result in Feldman's case.

Finally, the potential and immediate harm to Feldman dictates that an opportunity to be heard, while represented by counsel, was due him. Unlike with an *ex-parte*-issued arrest warrant, where the accused will have an opportunity to contest the sufficiency of the warrant on a motion to suppress before he may be tried and imprisoned (Federal Rules of Criminal Procedure 41(e); G*iordenello v. United States*, 357 U.S. 480, 484 (1958), here denial of the opportunity to be heard -- where Feldman would test and

Case 2:13-mj-00449-RTR   Filed 05/31/13   Page 4 of 17   Document 7

challenge the government's allegations and legal arguments -- (1) forces him to self-incriminate, which can precipitate conviction; *and* (2) likely will land him in prison, when Feldman fails to obey the Order compelling him to decrypt. Due process does not support such unfairness, and this Court may not condone it. See also Shellow Affidavit at ¶¶26-28 (addressing harm to Feldman from the unfair process, lack of harm to the government from a fair process, and Feldman's cooperative, transparent posture)(Exhibit 1).

The Government's Application and *Ex Parte* Request, the entire *ex parte* process which followed, and the Magistrate Judge's *ex parte* ruling compelling decryption all stem from insufficient due process, which denied Feldman the opportunity to be heard and the to get a fair and just ruling. This requires *vacatur* of the Order.

The major case which the government invokes where decryption was compelled, *U.S. v. Fricosu*, 841 F.Supp.2d 1232 (D. Colo.2012), involved three evidentiary hearings before an Article III judge on the government's All Writs Act application seeking compelled decryption. See Application at p.11 (DOC. 1); *Fricosu*, 841 F. Supp.2d at 1232. Inexplicably, the government here assumed that the due process given the defendant in *Fricosu* was not due Feldman in this case.

Concrete harm to Feldman and this Court from the due process deprivations of the *ex parte* action and proceeding in this case is multiple, for example:

- Based on misleading statements in the affidavits and insufficient evidence therein, *see infra*, the Order compels Feldman to do something which the government has *not shown* that he can do. (DOC. 1-1, DOC. 5-1, DOC. 6) If the Order stands, Feldman may be unable to obey it, which would cause him

-5-
Case 2:13-mj-00449-RTR    Filed 05/31/13    Page 5 of 17    Document 7

to be adjudged in contempt, exposing him to contempt sanctions and, if convicted, to an aggravated sentence, based on arguments of failure to accept responsibility and/or obstruction of justice (for disobeying an order he could not obey) under the advisory sentencing considerations. See Shellow Affidavit at ¶27. (Exhibit 1).

- the unfair *ex parte* nature of the Application and Request and the resulting judicial proceeding barred Feldman from presenting information (through expert testimony) which would enable the Court to understand key facts necessary for correct determinations and rulings.

    Among such un-presented information is that some encryption effects erasure of the encrypted data (so it ceases to exist), in which case decryption constitutes re-creation of the data, rather than simply unlocking still-existing data. See Shellow Affidavit at ¶15 (Exhibit 1). In light of this information and of well-established Fifth Amendment law, including *United States* v. *Hubbell*, 530 U.S. 27, 35-36 (2000), this Court could reasonably determine that compelling decryption here would in fact mean compelling *creation* of potentially incriminating materials not at all "voluntarily prepared by himself," *Id.* The Court would then likely deny the Application and *Ex Parte* Request on this ground: because compelling Feldman to decrypt the Storage System data would impermissibly require him to produce evidence against himself which does not currently exist (while the data is encrypted), contrary to the Fifth Amendment.

    Another piece of information this Court did not receive regarded the

importance in sting operations (like the one in this case) of "single source downloading," which alone indicates that the entire file is found on and is being downloaded from one target computer. Overall, it is possible that the target computer just has the file name itself, while the contents of the file (e.g. child pornography) are on another computer. In light of this information, the government's assertions in the affidavits -- that the encrypted Storage System had *file names* indicating child pornography -- do *not* indicate that child pornography resides on that Storage System. See Shellow Affidavit at ¶14(A) (Exhibit 1).

- the unfair *ex parte* nature of the Application, Request and the resulting proceeding barred Feldman from eliciting evidence by cross-examining the affiants which would expose the holes in their knowledge, showing how little they in fact knew "with reasonable particularity" to support compelled decryption. For examples of such evidence, see *infra*. *See* also *In re: Grand Jury Subpoena Duces Tecum Dated March 25, 2011, U.S. v. John Doe*, 670 F. 3d 1335 (11th Cir. 2012), (hereafter "Doe") at 1346-1347, which shows that even a *pro se* defendant can successfully cross-examine the government's affiants to show what they really do *not* know -- although they imply they do. Of course, the Defendant in *Doe* received due process, so he *could* challenge the affidavits and their authors -- and did so successfully.

**II. The Order Compelling Decryption is error and must be vacated, as based on erroneous factual findings, determinations, and interpretations of the law which are not harmless**.

The Order Compelling Decryption is erroneous and must be vacated, as it is based on errors and mistakes which are not harmless, including the following:

a. The affidavits submitted in support of the Application and the *Ex Parte* Request for Reconsideration abound in unsupported and misleading assertions which do not support the issuance of the Order, but lead to erroneous determinations and rulings.

The affidavits submitted in support of the Application and the *Ex Parte* Request for Reconsideration abound in unsupported and misleading assertions, whereby the affidavits do not support the issuance of the Order or the Magistrate Judge's determinations, on which the Order rests.

Among the key unsupported or misleading assertions on which the Magistrate Judge relied in making his determinations and issuing the Order are:

(1) that, Feldman has the ability to decrypt the Storage System. See Shellow Affidavit at ¶20 (the government apparently assumes that Feldman has memorized 16 passwords -- but cites no facts so indicating), 21 (citing counsel's research indicating that passwords can be 36 characters long and are randomly assigned by the device, until/unless changed by a user; this information, indicating Feldman's likely inability to decrypt the storage system, was omitted from the affidavits). (Exhibit 1).

(2) that, data in the Storage System is expertly custom-protected and that the government's attempts to access it will destroy the data or access to it. The government so argued to persuade the Court to shift the *government's* burden of decrypting to Feldman. In reality, nothing in the affidavits or the government's pleadings indicates that expert or custom encryption protects the data or that data-destroying mechanisms exist on

the Storage System. See Shellow Affidavit at ¶18 (Exhibit 1). Neither the straw (as unsupported) specter of the data's impending destruction nor the straw specter of custom technological barriers supports compelling Feldman to do for the government what it can, and must, do by itself -- particularly in light of his Fifth Amendment rights.

(3) that, multiple images of child pornography were found on the decrypted portion of the Storage System. See e.g. *Ex Parte* Request at 2 (stating that "several *images* of known child pornography were . . . retrieved" from the small decrypted portion of the Storage System; *c.f.* Affidavit, Paragraph 2 (c) (alleging that among the files on the decrypted portion of the storage system "were numerous *files* which constitute child pornography")(DOC. 5; Exhibit 1). The *Ex Parte* Request overstates the allegations in the affidavits. The affidavits do not support the assertion that child pornography images were found on the storage system: not with their wording or any sort of evidence. At best, the affidavits indicate existence of *file names suggesting* child pornography content. Nothing in the affidavits indicates the government "with reasonable particularity" *actually knows* (as opposed to *hopes*) that child pornography is on the storage system. The government thus misleads the Court into concluding that the government knows of the existence of child pornography on the storage system; and thus into ruling -- incorrectly -- that compelled decryption would not incriminate Feldman, since the existence of child pornography on the storage system is a "forgone conclusion." Both these incorrect determinations, unsupported by the affidavits and resting on the government's overstatement of what it knows, undergird the Court's ruling compelling Feldman to decrypt, although that act would in fact potentially incriminate him.

The Court so identified the issue before it: "whether the government ha[d]

established its *knowledge* of the existence, possession, and authenticity of the [child pornography] files" on the encrypted storage system with "'reasonable particularity' such that Feldman's decryption would 'add [] little or nothing to the sum total of the Government's information.'" (DOC. 6 at 1) (citing the earlier Decision and Order at 7 (*quoting Fisher*, 425 U.S. at 411)(emphasis added). (DOC. 6).

The affidavits do not with "reasonable particularity" allege *facts* showing the government's *knowledge* that child pornography is on the encrypted storage system. The Court erroneously determined otherwise and erroneously resolved the issue before it, because the affidavits were not tested and the affiants were not cross-examined before this Court.

Feldman re-asserts that he had a due process right to put the government's actual knowledge to a test, e.g. by cross-examining the affiants, thereby to show how little it knows and how compelled decryption would unfairly increase governmental knowledge, in violation of the Fifth Amendment.

> b. The legal analysis presented in the Application and Ex Parte Request is unreliable, one-sided, and leads to an incorrect result, in violation of Feldman's Fifth Amendment rights.

The government's documents suggest that the law governing compelled decryption is well-settled and clear, and under such law Feldman would not be incriminated by compelled encryption, under the "foregone conclusion" standard. Application at 9 *et. seq.* (DOC. 1) The government applies the *Fisher* "foregone conclusion" analysis (as applied by *U.S. v. Porter,* 711 F.2d 1397 (7th Cir. 1983)) to persuade the Court that compelled decryption is proper here. (DOC.1 at 9-10). *Fisher* and *Porter* are decades-old cases, however, involve ancient technologies, and do not

-10-
Case 2:13-mj-00449-RTR   Filed 05/31/13   Page 10 of 17   Document 7

address some of the questions present in newer, digital-data cases, which muddle the clarity of the law. The government's analysis does not persuade in light of new case law and current technologies. Moreover, the United States Supreme Court did not adopt a "reasonable particularity" standard for making "foregone conclusion" rulings. *United States v. Ponds*, 454 F.3d 313, 320 (discussing *Hubbell*, 167 F.3d 552, 581 (D.C. Cir. 1999)). Clarity is lacking as to how "foregone conclusion" is to be measured and determined.

A key recent case offering guidance is *Doe*, which the government strives to distinguish by focusing on a small factual difference: that in *Doe* the government did not know of *any* data encrypted in the storage media. (DOC. 1 at 11-12). The government asserts that *Doe* "merely require[s] that the Government do a thorough investigation and be able to independently prove the *Fisher* factors." *Id*. at 11.

But *Doe* ruled against compelled decryption because, like here, the government did not know enough to warrant compelled decryption, which would give the government lacking information. The *Doe* court cited these grounds: (1) because the act of (compelled) decryption is testimonial and potentially incriminating, amounting to admission "of *his knowledge of the existence and location of potentially incriminating files*," id. at 1346; and (2) because the government with no real knowledge of any files -- including incriminating files -- on the encrypted system sought compelled encryption by arguing that *incriminating data may be there*: "the encrypted drives are capable of storing vast amounts of data, *some of which may be incriminating*." This *was* "*not enough*" to meet the "reasonable particularity" standard. *Id.* at 1346-47 (emphasis added).

Here the government makes the same "not enough" argument: that the storage

-11-
Case 2:13-mj-00449-RTR   Filed 05/31/13   Page 11 of 17   Document 7

system can store vast data and apparently does, and "*some of it may be incriminating.*" As argued supra, the government suspects, but *does not really know* with "reasonable particularity" *that child-pornography exists on the storage system*. Thus, like in *Doe*, Feldman's (testimonial) decryption acts could potentially *tell the government what it yet does not know*, but what would incriminate Feldman: that child pornography files do exist on the storage system (if they do), where they are, what they represent, that Feldman knows of their existence, has access to them, knows of their location, etc.

Feldman submits that at a hearing on these Objections, he will present further legal arguments rebutting those of the government. He also submits that at the hearing he will adduce testimony showing that some of the assertions and statements in the affidavits were *knowingly* misleading, supporting a *Franks*-like challenge, where the agents are subject to cross-examination on what actions they actually took with respect to the storage system.

Feldman requests this Court to schedule and hold a hearing at which he can cross-examine the affiants who drafted the affidavits in support of the Application and *Ex Parte* Request for Reconsideration, and at which he can present expert testimony regarding the allegations and assertions in the affidavits.

  c. The Order may be void as a matter of law, because the All Writs Act did not give the Magistrate Judge the authority or jurisdiction to do what the government requested of it.

Feldman submits that the Order may be void as a matter of law, because on its face the All Writs Act did not give the Magistrate Judge the authority or jurisdiction to do what the government requested. The All Writs Acts, by its plain terms, applies to "courts established by an Act of Congress." 28 U.S.C. §1651(a). A magistrate judge is not such a

court. In discussing the magistrate judge's authority to act under the All Writs Acts in its Application, the government also refers solely to "district courts." *Id.* at 3. It does not explain why or how the Act empowers a magistrate judge to act under it.

In the All Writs Act cases cited by the government the acting tribunal was the district court, not a magistrate judge. See e.g. *Fricosu*, where the district court was asked to act under the All Writs Act to compelling decryption.

In working to meet its objections deadline, Feldman is unable to investigate and test the above thesis regarding the Magistrate Judge's lack of authority and/or jurisdiction under the All Writs Act. He is hereby not conceding the issue, but is raising it briefly so it may be preserved. He is also requesting the opportunity to further brief it, should it indeed prove meritorious.

### III. Under the facts of this case, in light of recent case law, and considering the still evolving nature of the law of compelled decryption, the Fifth Amendment continues to protect Feldman against compelled decryption.

Under the facts of this case, see supra, the Fifth Amendment continues to protect Feldman against compelled decryption, as shown in *Doe*.

As argued supra, pursuant to *Doe*, the Court should deny the government's request, because here the government does not know with sufficient particularity of the existence of child pornography on the encrypted storage system and is trying to induce Feldman (contrary to his Fifth Amendment right) to provide the information it lacks: that child pornography exists there, where is exists, that Feldman knows about it, can access it and knows of its location, etc. The government *does not really know enough*, as argued supra, for any testimonial value from Feldman's acts of decryption to be nil or a "foregone conclusion."

Indeed, as argued supra, the government does not know with reasonable particularity, and has not shown to this Court, that Feldman is capable of decrypting any or some of the storage units of the system; or even that he was their sole user or the person with sole access. Feldman's alleged ability, at one time to access or decrypt any of the many storage units, does not mean "with reasonable particularity" that he still has such ability now. The existence of Feldman's financial records and photographs on a small decrypted portion of the storage system also does not particularly mean that Feldman can now decrypt the storage units containing other data; or that he was once in sole possession and control of the suspected criminal files. That he lived alone and the sole user name for the computer was "Jeff" does not mean that no other individuals accessed, used, or controlled the computer. Also for these reasons, the government here simply does not know enough to make the testimonial value of Feldman's compelled decryption act nil.

Moreover, pursuant to *Doe*, Feldman's act of decryption performed from memory (if it were to happen) would be not just a physical act, but *a testimonial act requiring the disclosure of the contents of his mind* -- contrary to the Fifth Amendment. 670 F.3d at 1342 and n.15. The Eleventh Circuit agreed with *Doe* that the compelled act of decryption (typing) would implicitly tell the government what it did not really know: of *Doe's "knowledge of the existence and location of potentially incriminating files*; of his possession, control, and access to the encrypted portions of the drives; and of *his capability to decrypt the files.*" *Id.* at 1346 (emphasis added). The same would happen if Feldman performed compelled decryption: also here the government does not know with sufficient particularity that Feldman knows of the existence of incriminating files and

location, that he has access to them and can decrypt them. See argument supra. The act of compelled decryption would give the government this lacking information.

Thus, like in *Doe*, Fifth Amendment privilege applies to Feldman because the various inferences to be drawn from his (compelled) decryption act would make a difference to the government's case. Such inferences would not just confirm the government's knowledge: no foregone conclusions here.

Feldman asserted his Fifth Amendment right when the search warrant was being executed. He now hereby re-asserts his Fifth Amendment rights, based on the authorities cited *supra*, and as stated in the attached Affidavit of Jeffrey Feldman. See also Shellow Affidavit at ¶24. (Exhibit 1 & 2).

Conclusion and prayer for relief

For all the above reasons, Jeffrey Feldman asserts that no valid factual or legal grounds existed for the issuance of the Order, which resulted from multiple errors improperly prejudicial to Feldman's Fifth Amendment rights and harmful to Feldman's defense. The Order must be vacated, because it is based on insufficient factual assertions in the affidavits and overstatements by governmental counsel; on one-sided and inaccurate legal analysis in the government's pleadings; and on a fundamentally unfair proceeding violating Feldman's due process rights. Feldman also submits that the Order may be void as a matter of law, as made by a tribunal without the power or authority to act under the All Writs Act.

Feldman respectfully requests that this Court:

1. vacate the Order for reasons stated above, or
2. stay the Order's execution and issue an unrushed scheduling order:

a. affording Feldman the opportunity, in an adversarial setting, to put to a test the government's allegations (in the affidavits), assertions and arguments (in the Application and Request for Reconsideration), so the Court can reach a correct and reliable result, see Shellow Affidavit at ¶29, and

b. affording Feldman the time required to identify and retain experts who can reliably testify at hearings set in the scheduling order about the I.T. and technological matters involved in this case, see Shellow Affidavit at ¶¶16-17 (counsel has begun the process of identifying experts but will need substantial additional time complete the process and retain appropriate experts), and

c. affording the government the time to complete its usual decryption efforts, which often take months, see Shellow Affidavit at ¶ 22 (the government admits it usually takes months to complete such work), 23 (counsel's experience regarding long delays in completing such work).

3. set a briefing schedule allowing Feldman to address the potential All Writs Act argument, supra, if he determines that it has merit.

Dated at Milwaukee, Wisconsin, this 31st day of May, 2013.

Respectfully Submitted,

s/Robin Shellow
Robin Shellow, #1006052
324 W. Vine Street
Milwaukee, WI 53212
(414) 263-4488
tsg@theshellowgroup.com

Urszula Tempska, #1041496
Of Counsel

Attorneys for Interested Party,
Jeffrey Feldman